jjJONES, Judge.
Defendant, Ron Smiley was charged by bill of indictment on November 14, 1991, with second degree murder, a violation of La.R.S. 14:30.1. He pled not guilty. A jury found the defendant guilty of manslaughter and he was sentenced to serve ten years at hard labor. He now appeals, asking this court to review the record for errors patent.
NOPD Detective John Ronquillo testified that he investigated two murders during the *300 night of September 12-13, 1991. The murder of Junior Perkins occurred before midnight at a lounge located at the intersection of Second and Danneel Street. The murder of Kim Clark occurred about 12:45 a.m. in the 2000 block of Josephine Street. While conducting a canvas of the neighborhood trying to locate witnesses, Detective Ronquillo received notification to report to 1925 Jackson Avenue. The notification to report to 1925 Jackson Avenue resulted from a 911 call informing the police that there were three subjects standing in front of that address who had killed Kim Clark and were still in possession of the murder weapon.
|2Located at 1925 Jackson Avenue was an apartment building wherein the defendant resided with his girlfriend, Karen Perkins, the aunt of Junior Perkins. At least three other persons resided in the apartment building located at 1925 Jackson Avenue, including, Warren Taylor, one of the State’s chief witnesses at the trial. When Officer Ron-quillo arrived, he found that the other police officers on the scene had four people handcuffed on the ground. The police found a Charter Arms 38 caliber revolver in a fuse box in the foyer of the building. Through the national crime information center computer, the police learned that the gun was stolen and arrested the defendant and three other persons on the scene that night for possession of stolen property.
Warren Taylor testified at trial that on September 12 and 13, 1991, he was drinking beer with friends on Danneel Street when he heard of a murder at Second and Dryades Streets. The group then walked over to that corner and viewed the body of Junior Perkins. Taylor saw Kim Clark there. Later after returning to Danneel Street, Taylor decided to talk to Kim Clark about some repairs to Clark’s car Taylor was planning to do. While they were talking, Ron Smiley and Mark Meyer walked up. Smiley asked Clark if he knew anything about the murder of Perkins and Clark answered that he did not. Taylor turned and ran at that point because he felt it “just didn’t seem right.” As he was running away, he heard several shots. Taylor went home. Warren testified that he did not call the police because he didn’t “see anybody get shot.” The next day he heard that Kim Clark had been murdered. Taylor admitted having convictions for simple burglary, illegal carrying of a weapon, aggravated assault, and aggravated battery.
Mark Meyer testified that on September 12 and 13, 1991, after Junior Perkins was killed, he notified Perkins’ parents. He further testified that he and Ron Smiley were walking to the liquor store when they saw Warren Taylor hand Kim Clark on the sidewalk. The four men met, and Meyer heard a shot fired. He did not know who fired, but he turned and ran. Later that evening, Meyer saw Smiley who told him that someone had been shot. Meyer admitted that despite the fact that he was being treated at one of the neighborhood mental health centers for paranoid schizophrenia and was taking thora-zine, benadryl and sinequan, he was drinking while on medication and was drunk that evening. He testified that drinking while on medication caused him to be somewhat disoriented and also caused him to hallucinate. Meyer acknowledged that he had been convicted of illegal discharge of a firearm, battery, and theft.
NOPD Officer Kenneth Leary, an expert in examining firearms, testified that he examined the Charter Arms revolver and the bullets recovered in the murder of Kim Clark and determined that the bullets were fired from the same gun.
Dr. Paul McGarry, an expert in the field of forensic pathology who performed the autopsy on Kim Clark, testified that the death was caused by a gunshot wound in the chest and that there were three other wounds in Clark’s face.
Hattie Perkins, the sister of Karen Perkins and the aunt of Junior Phillips, testified that Karen Perkins had suffered a stroke several months prior to trial and was in no condition to testify as a witness at the trial.
Ron Smiley testified that he had known Clark since he was seven years of age and that he had no reason to kill Clark. On the night in question, Smiley said he heard Perkins was shot. He went to Perkins’ family and spoke to Perkin’s father and then to Karen, Perkin’s aunt. About that time, the police arrived and handcuffed everyone. The *301 police told him they needed to speak to him and took him to the police station. He was initially charged with |4possession of stolen property — the gun used in the murder of Kim Clark. He specifically‘denied murdering Clark and also denied seeing Warren Taylor that night. Smiley admitted a prior conviction for purse-snatching.
Counsel has filed a brief requesting only a review for errors patent. Counsel has also moved to withdraw because she believes, after a conscientious review of the record, that there are no non-frivolous issues to be raised on appeal. A copy of the brief was forwarded to the appellant and this Court informed him that he had the right to file a brief on his own behalf. He has not done so.
Counsel avers that she has reviewed all available transcripts, that she has found no trial court rulings which arguably support the appeal, and that she has complied with the procedures outlined by Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Counsel’s detailed review of the procedural history of the case and the facts of the case indicate a thorough review of the record.
As per State v. Troy Benjamin, 573 So.2d 528 (La.App. 4th Cir.1990), this Court has performed an independent, thorough review of all the pleadings filed in the district court, all minute entries of the district court proceedings, the bill of indictment and all transcripts contained in the appeal record. The appellant was properly charged by bill of indictment with a violation of La.R.S. 14:30.1 and the bill was signed by the foreman of the grand jury. The appellant was present and represented by counsel at arraignment, all motion hearings, jury selection, trial, and sentencing.
A review of the trial transcript raises serious questions as to whether the State proved every essential element of manslaughter beyond a reasonable doubt, or whether the jury was unduly influenced by the following exchange which took place on cross-examination of the defendant by the prosecutor:
Q. Okay, Did you tell your girlfriend, Karen Perkins, right after Junior was killed, did you grab her by the seat of her pants and say |s“baby, I’m going to get your revenge for you. Don’t worry about it”?
A. Hu? No.
Q. That was a lie, too?
THE COURT:
Wait. There’s no testimony about that. I’ve heard two people say this lady is not going to testify. I don’t want to hear anything about anything told to this lady unless you’re going to bring this lady in here.
Mrs. Faia:
All right.
Notwithstanding the doubtful validity of this line of questioning, the defendant’s attorney failed to object or to ask for a mistrial. Because the defendant neither assigned nor briefed this issue, this issue cannot be addressed on appeal.
While sentencing the defendant, the trial court specifically noted that, “This is a case where the evidence was totally circumstantial. ...” Nevertheless, appeal counsel failed to brief the issue of whether the circumstantial evidence was sufficient to convict per La.R.S. 15:438. Thus, this issue cannot be addressed on appeal.
Finally, our review of the record reveals an error patent. On the day of sentencing a motion for a new trial was made and denied. The record does not indicate that the appellant waived his right to a twenty-four hour delay between the denial of this motion and his sentencing as required by La.C.Cr.P. art. 873. In State v. Augustine, 555 So.2d 1331 (La.1990), the Supreme Court held that the trial court’s failure to observe the twenty-four hour delay did not constitute harmless error, even if the appellant did not raise that issue as error on his appeal, where the appellant argued his sentence on appeal. In this case, the appellant has not challenged his sentence and has not assigned as error the ifitrial court’s failure to observe the twenty-four hour delay. Thus, per our holding in State v. Collins, 584 So.2d 356 (La.App. 4th Cir.1991), this error must be considered harmless. The defendant’s sentence of ten years at hard labor is within the range of sentences mandated for the offense of manslaughter.
Accordingly, the appellant’s conviction and sentence are affirmed. For the reasons ex *302 pressed earlier in this opinion, appellate counsel’s motion to withdraw is denied.

CONVICTION AND SENTENCE AFFIRMED; MOTION TO WITHDRAW DENIED.